# EXHIBIT A

U#50149-010110, 50149-062810

# ADMINISTRATIVE SERVICES AGREEMENT NO. 50149

effective January 1, 2010 ("Effective Date")

between

## THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
(Prudential)

and

## KELLY SERVICES, INC.
(Purchaser)

The Purchaser has a Plan of Benefits as described in Exhibit A (herein called Plan) for the benefit of the classes of persons set forth in the Plan. The Purchaser desires Prudential to provide the services set forth in Exhibit B (herein called Disability Services or Services and sometimes referred to herein, in part, as Claim Services) with respect to the Plan. Prudential will perform these Services provided that the Purchaser makes payments for the Services as listed in Exhibit C.

By their signatures below, Prudential and the Purchaser agree that this Agreement which follows is approved and its terms are accepted. The provisions on the pages which follow as listed on the Table of Contents are part of this Agreement.

Date: _____  KELLY SERVICES, INC.
(Purchaser)

Witness: _____  By: _____
(Signature and Title)

Roseland, NJ                    THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA

June 28, 2010                   By: _/s/ Michael G. Fernito_____
Vice President, Contracts

An authorized officer of Prudential and an authorized representative of the Purchaser have each executed this Agreement in duplicate.

This Agreement applies to the Short Term Disability Coverage under the Purchaser's Plan.

## TABLE OF CONTENTS

AGREEMENT

I. GENERAL PROVISIONS

II. OBLIGATIONS OF THE PURCHASER

III. OBLIGATIONS OF PRUDENTIAL

IV. AUDITS BY AND DISCLOSURES TO THE PURCHASER

V. CHARGES FOR THE SERVICES

VI. TERMINATION OF THE AGREEMENT

VII. MISCELLANEOUS PROVISIONS

EXHIBIT A - PLAN OF BENEFITS

EXHIBIT B - DISABILITY SERVICES

I. CLAIM SERVICES

II. OTHER SERVICES TO BE FURNISHED IN CONNECTION WITH THE PLAN

III. OTHER PROVISIONS

EXHIBIT C - SCHEDULE OF CHARGES

I. GENERAL PROVISIONS

A. Hold Harmless and Indemnification: Prudential agrees to hold harmless and indemnify the Purchaser from any Indemnifiable Losses arising out of any function of Prudential under this Agreement, provided that it is determined that the liability therefor was the direct consequence of gross negligence, criminal conduct or fraud on the part of Prudential. In no event will Prudential be responsible for any punitive, incidental or consequential damages arising under the Services provided under this Agreement.

*[margin note: Pru's oblig to indemnify Kelly]*

Except as described in the preceding paragraph, the Purchaser agrees to hold harmless and Indemnify Prudential from any Indemnifiable Losses arising out of any function of Prudential under this Agreement (including but not limited to any Indemnifiable Losses arising from a breach of confidentiality in connection with any information or data relating to this Agreement released by Prudential to the Purchaser, or to any third party at the request of the Purchaser), or from any services performed under this Agreement, including without limitation any Indemnifiable Losses arising out of any incomplete or inaccurate data or records provided to Prudential by the Purchaser or by a third party acting on behalf of the Purchaser, for any period prior to the Effective Date of this Agreement.

*[margin note: Kelly's oblig to indemnify Pru]*

The Purchaser further agrees to hold harmless and indemnify Prudential from any levy, assessment or tax arising from any benefit under the Plan or any service or transaction under this Agreement.

As used in this Agreement, the term Indemnifiable Losses will include any claim, damage, lawsuit, settlement, judgment or penalty, including attorney's fees and other expenses in connection therewith.

B. Lawsuits: Either party to this Agreement that becomes aware of a lawsuit that might give rise to an indemnification under this Agreement will notify the other party promptly in writing of the details of such lawsuit, except that any delay or failure to so notify the party whose obligation it is to indemnify will only relieve that party of its obligations hereunder to the extent it is prejudiced by reason of such delay or failure.

It is understood and agreed that Prudential may, in its sole discretion, tender the defense of any lawsuit that might give rise to an indemnification obligation on the part of the Purchaser, under this Agreement to the Purchaser. Either party that has been named as defendant in a lawsuit relating to this Agreement has the right to conduct its own defense. However, except in cases where Prudential tenders the defense of a lawsuit to the Purchaser, the parties may mutually agree that one of the two parties will be responsible for the mutual defense of both parties. In any event, the two parties will consult and cooperate with each other in a reasonable manner with the objective of coordinating the overall defense of the case.

If this Agreement terminates, the hold harmless and indemnification provisions above will continue to apply to any loss or cause of action arising out of any function of Prudential under this Agreement prior to its termination.

2:12-cv-13080-JAC-MAR  Doc # 24-2  Filed 02/19/13  Pg 5 of 16  Pg ID 125
2:12-cv-13080-JAC-MAR  Doc # 9-1  Filed 11/30/12  Pg 5 of 17  Pg ID 45

## II. OBLIGATIONS OF THE PURCHASER

A. **Furnishing Information:** The Purchaser will have the obligation (1) to furnish any information required in accordance with this Agreement or any Exhibit attached hereto when and as specified therein; (2) to establish and maintain any records required in accordance with this Agreement or any such Exhibit; and (3) to furnish to Prudential such other information required by Prudential in order to provide the Services.

B. **Prompt Discharge of Obligations:** Prudential's performance of the Services will require prompt discharge by the Purchaser of such obligations. Therefore, Prudential will not be considered to have failed to perform its obligations under this Agreement if any delay or non-performance is due, in whole or in part, to the Purchaser's failure to promptly discharge such obligations.

C. **Authorized Persons:** The Purchaser will provide Prudential with the names of individuals authorized to act for the Purchaser in connection with this Agreement, together with the scope of their authority.

## III. OBLIGATIONS OF PRUDENTIAL

A. <u>Prudential will perform the Disability Services set forth in Exhibit B on behalf of the Purchaser in connection with the Plan</u>    X   *Pru's duties*

B. Prudential will maintain records used to perform the Services in accordance with Prudential's then current rules for maintenance of claim files and other records.

## IV. AUDITS BY AND DISCLOSURES TO THE PURCHASER

A. **Scheduling of Audit:** The Purchaser may arrange for an audit at any time during the normal business hours of Prudential. The audit must be scheduled with appropriate notice and based on a prearranged agenda agreed to in advance by the appropriate office of Prudential.

B. **Audit Agreement:** Before engaging in an audit, the Purchaser will execute an audit agreement in the form prepared by Prudential. The Purchaser may choose a third party representative to perform the audit, other than a representative whose action, could, in Prudential's sole opinion, represent a conflict of interest. If a third party representative is to perform the audit, that third party, the Purchaser and Prudential must agree in writing to the terms set forth above.

C. **Inspection of Records and Information:** To assist in the audit, Prudential agrees to permit the Purchaser to inspect proprietary information, and records and other information regarding claims for disability benefits submitted by persons covered under the Plan. Such information and records will be provided with due regard to the privacy of providers and of persons, as detailed in the audit agreement.

Individually identifiable personal health information and financial information will not be available for the Purchaser's audit unless the Purchaser, and any third party vendor performing the audit on the Purchaser's behalf, signs a Prudential audit agreement providing for the confidential handling of such information by the Purchaser and any third party vendor to whom such information is disclosed, which also provides that the Purchaser and any third party vendor will hold Prudential harmless from any losses arising out of any unauthorized use or disclosure of such information.

These same provisions will also apply to any non-audit request for disclosure of such information by the Purchaser for plan administration purposes, subject to signing the appropriate Prudential non-disclosure agreement. In the absence of any such signed Prudential non-disclosure agreement, such individually identifiable information will not be disclosed to the Purchaser and any third party vendor acting on behalf of the Purchaser unless the person who is covered under the Plan and the person whose disability is the subject of the claim (if they are not the same) gives written consent for such information to be released to the Purchaser and any third party vendor for the purposes of the audit.

D. **Expenses:** It is understood and agreed that all expenses incurred by Prudential in connection with the audit will be inventoried and charged to the Purchaser.

## V. CHARGES FOR THE SERVICES

A. **Payment of Charges:** Charges for the Services will be in accordance with the Schedule of Charges set forth in Exhibit C. Charges will be payable to Prudential by the Purchaser within thirty-one (31) days after the billing date (the date on which Prudential releases a notice to the Purchaser requesting payment of the charges for the Services performed). If the Purchaser fails to remit such payment to Prudential within thirty-one (31) days after the billing date, a Late Fee Charge, as described in Exhibit C, will be payable to Prudential. Also, at its option, Prudential may exercise its right to terminate this Agreement as described in the Termination of the Agreement section below.

B. **Changes in Charges:** Prudential may change the Schedule of Charges as of any date on or after January 1, 2013. Prudential may also change the Schedule of Charges as of any date as a result of any modification of the Plan, or this Agreement, or any administrative procedure directly supportive of the Plan or this Agreement, as requested by the Purchaser and agreed to by Prudential.

If such a change is in connection with a modification of the Plan or this Agreement, or in an administrative procedure, it will become effective on the effective date of the modification. If such a change is not in connection with a modification of the Plan or this Agreement, or in an administrative procedure, it will become effective on the date specified, provided Prudential has given notice of the change at least sixty (60) days prior thereto, and unless the Purchaser notifies Prudential at least thirty (30) days prior to such specified date of its intention to terminate this Agreement as of the date specified.

C. **Acceptance of Late Payment:** Any fee payment remitted to and accepted by Prudential more than thirty-one (31) days after the billing date will not establish a course of dealing, or constitute a waiver or modification, or in any way alter, amend or affect Prudential's right to terminate this Agreement pursuant to the Termination of the Agreement section below.

D. **Performance Levels:** Prudential and the Purchaser will, from time to time, establish the performance service levels for each of the services to be measured, which may include, without limitation, standards for plan administration, customer service, phone service and abandonment rates, and timeliness of enrollment, underwriting and claim transactions. Prudential and the Purchaser will mutually agree upon a process for determining whether such performance levels have been met and the amount of any such payment that will be made as a result of failure to meet such performance levels. Unless Prudential and the Purchaser mutually agree to another process or timeline, a review of Prudential's performance will be done at the end of each calendar year and any applicable payment will be made on a date determined by Prudential.

Any amounts payable will be paid directly by check to the Purchaser or to a trustee or other party at the Purchaser's direction. To the extent any portion of the amounts paid to the Purchaser is required by law (including the Employee Retirement Income Security Act of 1974, as amended) to be used or applied solely for the benefit of the classes of persons set forth in the Plan, the Purchaser agrees to use or apply such portion solely for the benefit of such classes of persons and to otherwise comply with any of its obligations under ERISA or other applicable law. Upon transfer, Prudential will have no responsibility for the use and/or allocation of any such funds, nor will Prudential have any continuing obligations under this provision relating to performance levels. This provision does not create any third party beneficiary rights in any plan participant or other person.

## VI. TERMINATION OF THE AGREEMENT

A. This Agreement will terminate upon the first to occur of the following:

1. The expiration of thirty (30) days after written notice has been given by Prudential or the Purchaser of its intention to terminate because of the other's breach of material obligations under this Agreement;

2. The date specified in a written notice given by Prudential to the Purchaser of its intent to terminate this Agreement because of the Purchaser's failure to remit to Prudential charges for Services within thirty-one (31) days after the billing date;

3. Termination of the Plan;

4. Modification of the Plan, but such modification of the Plan will not operate to terminate this Agreement (a) if this Agreement is amended to make such modified plan the Plan under this Agreement or (b) while this Agreement is being continued, by mutual agreement between Prudential and the Purchaser, prior to such amendment;

5. The expiration of the day prior to any billing date if either Prudential or the Purchaser has given at least thirty (30) days prior written notice to the other of its intention to terminate this Agreement as of that billing date;

6. The date a change in the Schedule of Charges is to become effective, in the event that the Purchaser notifies Prudential at least thirty (30) days prior thereto of its intention to terminate this Agreement.

## VII. MISCELLANEOUS PROVISIONS

A. This Agreement, including its Exhibits, may only be changed by an amendment hereto signed by an authorized representative of the Purchaser and an officer of Prudential.

B. Any of the functions to be performed by Prudential under this Agreement may be performed by Prudential or any of its subsidiaries. Any reference in this Agreement to Prudential will include its directors, officers and employees as well as the directors, officers and employees of any of its subsidiaries.

C. Any references in this Agreement to the Purchaser will include its directors, officers, and employees acting in the course of their employment, but not as claimants.

D. Confidential And Proprietary Information

1. Prudential Confidential Information: The forms, methods, systems, procedures, trade secrets, technical data and controls, software and intellectual property Prudential utilizes in the performance of the Services ("Prudential Proprietary Information") are to remain the property of Prudential and are not, at any time to be utilized, distributed, copied or otherwise utilized or acquired by the Purchaser except as expressly authorized by Prudential in writing. All information concerning Prudential that is not otherwise generally available to the public Including, but not limited to, non-public information concerning finances, earnings, volume of business, methods, systems, practices, plans, Prudential Proprietary Information (as defined above), trademarks and copyrights are confidential ("Prudential Confidential Information"). The Purchaser agrees not to disclose Prudential's Confidential Information except to its own employees and agents as necessary to carry out this Agreement. The Purchaser covenants and agrees that its employees and agents will abide by this Agreement and will act (by instructions, agreement or otherwise) to satisfy the obligations with respect to confidentiality. The Purchaser will exercise reasonable precautions to insure that the Prudential Confidential Information is not disclosed.

2. Purchaser Confidential Information: The forms, methods, systems, procedures, trade secrets, technical data and controls, software and intellectual property the Purchaser utilizes in the performance of the Services ("Purchaser Proprietary Information") are to remain the property of the Purchaser and are not, at any time to be utilized, distributed, copied or otherwise utilized or acquired by Prudential except as expressly authorized by the Purchaser in writing. All information concerning the Purchaser that is not otherwise generally available to the public including, but not limited to, non-public information concerning finances, earnings, volume of business, methods, systems, practices, plans, Purchaser Proprietary Information (as defined above), trademarks and copyrights are confidential ("Purchaser Confidential Information"). Prudential agrees not to disclose Purchaser Confidential Information except to its own employees and agents as necessary to carry out this Agreement. Prudential covenants and agrees that its employees and agents will abide by this Agreement and will act (by instructions, agreement or otherwise) to satisfy the obligations with respect to confidentiality. Prudential will exercise reasonable precautions to insure that the Purchaser Confidential Information is not disclosed.

3. **Non-Confidential Information:** The confidentiality obligations set forth in 1. and 2. above, will not apply with respect to any information (a) known by either party prior to receipt from the other party, (b) generally known in the industry prior to such receipt, or (c) independently developed by the party receiving the Confidential Information or (d) after substantially the same information is published or becomes available to others without restriction through no act or failure to act on the part of the receiving party.

4. **Ownership of Work:** Prudential will hold full title to any work product Prudential creates and develops in the course of performing the Services under this Agreement, and any system, process, work flow, diaries, invention or tool that it develops pursuant to the services rendered under this Agreement or from any notes, reports, memoranda made or prepared in connection with this Agreement. Prudential will maintain in Prudential's own name any copyrights, trademark registrations and/or other protection available. Without limiting the generality of the foregoing, Prudential owns and holds full title to Prudential's utilization of proprietary internal software tools, protocols and databases, and other intellectual property owned and controlled by Prudential or its parent company or subsidiary. Any enhancements, improvements or revisions to such intellectual property in connection with services under this Agreement will be and remain the exclusive property of Prudential.

5. **Disclosure Compelled by Law or by Legal Process:** If either party receives a request by law or by legal process to disclose the other party's Confidential Information the receiving party will notify the disclosing party of the request within five (5) business days of the receipt of the request and, if disclosure is required, the receiving party will use its best efforts to narrow the request and/or obtain a protective order or other similar assurance that the information required to be disclosed will be treated confidentially by the party making the request.

E. **Insurance:** Prudential will, at its expense, maintain professional liability insurance in the amounts of not less than one million dollars ($1,000,000) per occurrence and five million dollars ($5,000,000) aggregate. Prudential will upon written request provide evidence of such insurance policies to the Purchaser.

F. **Health Care Decisions:** Prudential is not a health care provider and notwithstanding the Services provided by Prudential under this Agreement, all decisions concerning the rendering of health care services are determined by the patient, the patient's physician, and the hospital or other health care provider and Prudential will have no responsibility for or obligations with respect to any such health care decisions.

G. **Notice:** All notices, demands, payments, or other communications required or permitted hereunder will be delivered or mailed to the parties at the addresses set forth below or at such other place as the party designates in writing.

To Prudential:

Vice President, Group Insurance Account Management
Prudential Insurance Company of America
80 Livingston Avenue
Roseland, New Jersey 07068-1733

With copy to:

Chief Legal Officer, Group Insurance
Prudential Insurance Company of America
80 Livingston Avenue
Roseland, New Jersey 07068-1733

To Purchaser:

Jeff Rhoads
Kelly Services, Inc.
999 West Big Beaver Road
Troy, Michigan 48084

ASO-G7

Agreement No. 50149
Effective Date: January 1, 2010

## EXHIBIT A
## Plan of Benefits

The term "Booklet" wherever used below refers to the document describing the Purchaser's "Plan of Benefits" for the classes of persons indicated. The Plan of Benefits for each class of persons indicated is determined by: (1) the Booklet that applies to that class; and (2) any modification to that Booklet, provided the modification is listed below or is included in an amendment to this Administrative Services Agreement.

It is understood and agreed that:

1. The Purchaser shall furnish to Prudential a written Plan Document, booklet or other description of the Plan of Benefits for attachment to this Exhibit A.

2. Prior to the Purchaser's completion of the written Plan Document, booklet or other description of the Plan of Benefits, Prudential shall furnish the Services described in this Administrative Services Agreement in accordance with instructions given by the Purchaser, whether given in writing, verbally or otherwise, and such instructions shall constitute the Plan of Benefits referred to in this Administrative Services Agreement.

Agreement No. 50149
Effective Date: January 1, 2010

## EXHIBIT B
## Disability Services

Prudential will provide the following Disability Services in accordance with the terms and conditions of the Agreement and any additional provisions set forth in this Exhibit. In the event of any conflict between the terms of this Exhibit and the terms of the Agreement, the terms of this Exhibit will govern.

I. **CLAIM SERVICES**

   A. **Claim Processing:** While the Agreement is in effect, Prudential will accept for processing those claims for benefits under the Plan for which proof of a claim is furnished, in a form satisfactory to Prudential.

   Proof of claim will be submitted by telephone, using Prudential's intake number.

   Written notice of claim should be sent to Prudential within thirty (30) days after the date a claimant's disability begins. Initial written proof of claim must be provided to Prudential no later than ninety (90) days after the end of any elimination period under the Plan. If Prudential requests proof of continuing disability, such proof must be received within fourteen (14) days of the request. However, Prudential may at its discretion accept any claim for which proof is submitted after the expiration of said ninety (90), thirty (30) or fourteen (14) days.

   B. **Determination of Eligibility for Benefits:** <u>Prudential will determine a claimant's eligibility for benefits under the Plan based on information furnished to Prudential.</u> Such information identifying by name the persons then participating under the Plan, the effective dates of their participation and the extent of their coverage under the Plan will be furnished by the Purchaser, in a form satisfactory to Prudential, as of the effective date of the Agreement and subsequently during the continuance of the Agreement. <u>The Purchaser will hold Prudential harmless from any Indemnifiable Loss arising from Prudential's use of such information.</u>

   Information upon which Prudential will determine a claimant's eligibility for benefits under the Plan will be furnished to Prudential by paper or via a secured Prudential website.

   Prudential also performs a medical record review for new claims which may be affected by any pre-existing condition limitation of the Plan.

   C. **Claim Determination:** <u>Prudential will assist the Purchaser in determining, in accordance with the provisions of the Plan, the duration of benefits, if any, for each claim received.</u> Each claim determination is based on Plan provisions and the duration guidelines, such as the Medical Disability Advisor, and will be made within three (3) business days after all information is received.

The Employee Retirement Income Security Act of 1974, as amended, requires that claimants be notified of their claim determination within 45 days of receipt of the claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the Plan. A written notice of the extension, the reason for the extension and the date by which the Plan expects to decide the claim will be furnished to the claimant within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the Plan. A written notice of the additional extension, the reason for the additional extension and the date by which the Plan expects to decide the claim, shall be furnished to the claimant within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

The determination includes ongoing claim management using all available resources including clinician review and involvement based on physician's certification. It also includes a return to work strategy and the request for and analysis of additional medical information to support ongoing disability, independent medical examinations, consultation and other services that are appropriate to the claim.

The duration guideline for a normal maternity disability claim is 6 weeks of post-partum benefits. The duration guideline for a maternity disability claim for a caesarean section is 8 weeks of post-partum benefits. These are guidelines only. Prudential will assess the claimant's ability to work and the extent to which the claimant is able to work by also considering the facts and opinions from the claimant's doctors, and doctors, other medical practitioners or vocational experts chosen by Prudential.

D. **Communication of Decisions:** Prudential mails claim approvals and denials to the claimant and the Purchaser. In the case of a denial, a medical explanation appears only on the claimant's copy. The Purchaser may also access a report of approvals and denials via a secured Prudential website.

E. **Appeals of Claim Denials:** Prudential informs anyone whose claim has been denied the reason for such denial and sets forth the steps the person must take to receive a full and fair review of the decision denying the claim. The Purchaser hears all levels of appeal and makes the final claim determination. The Purchaser may request advice and assistance from Prudential for any level of appeal and before making the final claim determination.

Communication of Claim Appeal Decisions under the Plan: Prudential, on the Purchaser's behalf, communicates the Purchaser's appeal decision and final claim determination to the claimant.

F. **Claim Investigations:** Prudential may, at its option, investigate any claim or have the claimant examined by a physician during pendency of claim. The selection of claims and frequency for investigation will be determined by Prudential, but Prudential will also consider for investigation other claims when requested by the Purchaser. Any such investigation may be performed by a vendor selected by Prudential.

G. Vendor Services: Prudential may, at its option, arrange for a vendor to provide services in connection with the Claim Services set forth in this section. The services for which vendors may be used include, but are not limited to, the following:

1. Independent Medical Examinations of a claimant;
2. Obtaining medical records;
3. Clinical specialist consultation and review of a claimant's records;
4. Rehabilitation services;
5. Social Security Disability Insurance claimant assistance services through Prudential's preferred vendor.

It is understood and agreed that all expenses incurred by Prudential in connection with vendor services will be inventoried and charged to the Purchaser. Such expenses may include printing charges and advocacy fees.

## II. OTHER SERVICES TO BE FURNISHED IN CONNECTION WITH THE PLAN

A. Reports: Prudential will provide access to Web reporting via a secured Prudential website. Web reporting allows the Purchaser to select a standard report or create a custom report within the parameters of the system, to schedule specified times when selected reports will be run, and to receive an e-mail advisory when such reports are ready.

B. Cost Analysis Services: Upon request of the Purchaser and receipt of any required information, Prudential will furnish to the Purchaser an estimate of the benefit cost of any proposed modification or extension of the Purchaser's Plan described in Exhibit A. In connection therewith, Prudential will notify the Purchaser of any changes in the Schedule of Charges under the Agreement which would be required if the Plan under the Agreement were so modified or extended.

C. Materials to be Furnished: Materials will be of the type normally prepared by Prudential for the purpose intended.

1. Prudential will, where requested by the Purchaser, prepare and furnish to the Purchaser:

   a. Electronic versions of forms to be used for submission of claims for benefits under the Plan and instructions for their use.

   b. Electronic versions of forms to be used in administering the Plan and instructions for their use.

2. Prudential will also prepare the text of any amendments to this Agreement, including any amendment changing the Plan under this Agreement.

D. Other Services:

Benefit Plan Design: Prudential will, taking into account trends in employee benefits and costs, assist the Purchaser in the design of its Plan described in Exhibit A and any desired revisions thereof.

III. OTHER PROVISIONS

A. Fiduciary Duty: <u>It is understood and agreed that the Purchaser retains complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder, including all fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended, and that Prudential is empowered to act on behalf of the Purchaser in connection with the Plan only as expressly stated in this Agreement or as agreed to in writing by Prudential and the Purchaser.</u>

B. Forwarding of Records: If this Exhibit is terminated, no further Services will be furnished by Prudential except as mutually agreed to by Prudential and the Purchaser. Prudential will forward to the Purchaser such records as the Purchaser may reasonably require for the administration of the Plan or any plan adopted in its place. It is understood and agreed that the cost incurred by Prudential for furnishing these records will be inventoried and charged to the Purchaser.

Agreement No. 50149
Effective Date: January 1, 2010

## EXHIBIT C
## Schedule of Charges

A. Basic Fees: The following basic fees are for all services, other than those described in B, C and D below:

   $2.97 per employee covered under the Short Term Disability coverage under the Plan, per month.

B. Charges for Vendor Services: Actual cost as inventoried.

C. Charges for Purchaser's Audit: Actual cost as inventoried.

D. Charges for Forwarding Records If Disability Services End: Actual cost as inventoried.

E. Late Fee Charge: For each fee payment remitted to Prudential more than thirty-one (31) days after the billing date: 1% of the billed amount for each month or portion thereof that it is overdue. Such late fee charge will commence on the thirty-second day after the billing date.